TOWN OF ST. JOHNSBURY *v.* TOWN OF LYNDON.

May Term, 1935.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed October 1, 1935.

*N. A. Norton* and *Porter, Witters & Longmoore* for the defendant.

*Searles & Graves* for the plaintiff.

POWERS, C. J. Ray Barrington, with his family, lived in the town of Lyndon and had a residence there at the time of his death on February 1, 1929. He left a widow and several children who continued to live in Lyndon until July 1, 1929, when they removed to St. Johnsbury, where they have since resided. The few hundred dollars left by Barrington were soon exhausted by funeral and living expenses, and in May, 1933, Mrs. Barrington applied to the town of St. Johnsbury for assistance. This was furnished, and the suit in hand is brought to recover the amount of money so expended by the plaintiff. In May, 1929, Mrs. Barrington began receiving aid under P. L. 5421, from the department of public welfare; and she continued to receive the sum of two dollars per week for certain of her children until May, 1933, and the town of Lyndon has from time to time repaid to the State one-half of it. Aside from this,

neither Barrington nor his widow had received public aid prior to her application to the plaintiff as stated.

█ █ It thus appears that when her husband died, Mrs. Barrington had a pauper residence in the defendant town, P. L. 3919. It also appears that she gained a residence in St. Johnsbury—having lived there from July 1, 1929, until May, 1933, supporting herself and family—unless the aid furnished by the welfare department prevented the acquisition of such a residence. So, as the case is presented, the only question before us is as to the effect of such aid, if any, in the matter of pauper residence. It has none. P. L. 5421 is wholly and exclusively a child welfare enactment. The whole tenor of Chapter 224 of the Public Laws shows this. The carefully chosen language of P. L. 5421 shows it. The Legislature recognizing the advantages to young children of home and family life, made provision for keeping the family together in certain cases by granting meager assistance to make such a result possible. This mother was not pauperized by accepting the assistance furnished her by the welfare department. So far as her standing before the pauper law was concerned, she was not affected by it. The grant was not made for her benefit, but for the benefit of the children. They were the objects of legislative solicitude. The money was passed over to her, to be sure, but only that it might be used to provide a home for the children. There is no allusion to the pauper law, either in terms or by intendment. The overseer of the poor has no voice in the matter of such aid and no duty to perform. The State alone investigates and acts. If the Legislature had intended that this kind of aid should affect the pauper standing of a widow in a case like this, it would have been a very simple matter to have so specified either by making the act a part of Chapter 160 of the Public Laws or otherwise.

*Judgment reversed, and judgment for the defendant to recover its costs.*